UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
DARNELL EPPS,

                           Petitioner,

      -against-

THOMAS POOLE, Warden, Five Points
Correctional Facility,

                           Respondent.
----------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 14 2010 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**

07 CV 3432

DEARIE, Chief Judge.

    Petitioner Darnell Epps seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the application is denied, and the petition is dismissed.

**Background**

    At 2:30 a.m. on March 8, 2000, inside the Grace grocery store in Brooklyn, petitioner's brother Darryl Epps fatally shot Derek Warren five times at close range in the head and neck. Petitioner pulled out a gun but did not fire. The incident was captured on tape by the store video camera. Petitioner surrendered to the police five days later. He gave conflicting accounts in two written and two videotaped statements. He first told the police that an older-looking Latino man shot Warren. (Tr. 453.) He later admitted that his brother was the shooter and that his brother had asked that he "back [him] up" as they entered the store. (Tr. 479-80.) Petitioner was charged with one count of depraved indifference murder in the second degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree, each under an "acting in concert" theory.

    At his jury trial, petitioner testified that he entered the store first, and then his brother "came in fast," "grabbed" Warren, "there was quick hand action and a shot went off." (Tr. 439.)

Warren "st[u]ck his arm up on the gun" and "[t]he gun [went] off." (Tr. 476-77.) As an instinctual response, petitioner pulled out his own gun, which was unloaded. (Tr. 439, 476.) He did not know whether the first shot went off by accident because everything "happened so fast." (Tr. 477.) Warren did not have a gun, but Darryl was somehow shot. (Tr. 442-43.)

Petitioner denied knowing that his brother was going to shoot anyone. Although he had told the police that he called Jesus Plazza, a dealer who sold drugs outside the grocery store, to tell him to leave "because something might happen, it was not safe there," (Tr. 463), he testified at trial that he had called Plazza to buy some marijuana, not to warn him. In addition, petitioner had indicated to the police that Warren told Plazza that he wanted to shoot him or his brother, but both petitioner and Plazza testified at trial that Warren had merely called petitioner "a pussy." (Tr. 277, 432-33; 480.) Plazza maintained, however, that petitioner phoned him before the shooting to tell him to leave the store. (Tr. 281.) Petitioner explained that he had lied in each of his statements to the police, at first in order to protect himself and his brother. When was promised release in exchange for his cooperation, he changed his story to conform to the accounts other witnesses had given to the police.

On October 11, 2000, petitioner was found guilty of depraved indifference murder and acquitted of the weapons possessions charges. On November 15, 2000, he was sentenced to an indeterminate term of seventeen and one-half years to life in prison.[1] On appeal, petitioner's counsel argued that because his brother's actions were intentional and not reckless, the evidence was insufficient to convict petitioner as an accomplice to depraved indifference murder. The Appellate Division denied petitioner's sufficiency claim as unpreserved and without merit, and

---

[1] Darryl Epps pleaded guilty to second-degree intentional murder and was sentenced to seventeen and one-half years to life.

2

affirmed his conviction on April 11, 2003. People v. Epps, 759 N.Y.S.2d 893 (App. Div. 2003). Leave to appeal was denied on September 15, 2003. People v. Epps, 100 N.Y.2d 620 (2003). Petitioner's conviction became final ninety days later, in December 2003. See 28 U.S.C. § 2244(d)(1)(A); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001) (if no petition for certiorari is filed, conviction becomes final ninety days after Court of Appeals denies leave to appeal).

On June 10, 2003, between the time petitioner's conviction was affirmed and the time his conviction became final, the New York Court of Appeals decided People v. Hafeez, 100 N.Y.2d 253 (2003), in which it reversed a depraved indifference murder conviction based on accomplice liability where the attack on the victim was "quintessentially intentional." Id. at 258. On August 20, 2004, petitioner, pro se, moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440 on the ground that that Hafeez had changed New York's depraved indifference murder law. By decision dated August 1, 2005, the court denied the motion, concluding that even applying Hafeez and subsequent New York depraved indifferent murder case law, petitioner was not entitled to relief. The Appellate Division granted leave to appeal but affirmed the denial of Section 440 relief. People v. Epps, 831 N.Y.S.2d 341 (App. Div. 2007). Leave to appeal was denied on June 21, 2007. People v. Epps, 9 N.Y.3d 843 (2007).

In the interim, petitioner moved for a writ of error coram nobis, challenging appellate counsel's failure to raise ineffective assistance of trial counsel claims, including a claim based on trial counsel's failure to properly preserve the sufficiency claim. The Appellate Division denied the motion on October 17, 2006, on the merits. People v. Epps, 821 N.Y.S.2d 925 (App. Div. 2006). Leave to appeal was denied on January 8, 2007. People v. Epps, 8 N.Y.3d 845 (2007). Petitioner's motion to reargue was denied on January 22, 2007.

On August 17, 2007, petitioner filed this action for a writ of habeas corpus. He again argues that under New York law at the time his conviction became final, the evidence at trial was consistent only with an intentional murder and, consequently, insufficient to support his conviction for depraved indifference murder as an accomplice. In addition, petitioner presses claims of ineffective assistance of trial and appellate counsel.

**Discussion**

I. Sufficiency and Accessorial Liability for Depraved Indifference Murder

A habeas petitioner challenging sufficiency bears a "very heavy burden," Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citing Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993). The reviewing court must evaluate the evidence in the light most favorable to the prosecution and uphold the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); a court "faced with a record of historical facts that supports conflicting inferences *must presume*—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and *must defer* to that resolution." Id. at 326 (1979) (emphasis added).

Under New York law, a person is liable as an accomplice for the criminal conduct of another person when "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. A person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of

another person," N.Y. Penal Law § 125.25(2), and "[a] person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur." N.Y. Penal Law § 15.05(3). Under People v. Register, 60 N.Y.2d 270 (1983), the controlling case at the time of petitioner's trial and conviction, "[u]nder circumstances evincing a depraved indifference to human life" defined "the factual setting in which the risk creating conduct must occur," and was not part the required culpable mental state of the crime of depraved indifference murder. Id. at 276-77.

In finding petitioner guilty, the jury concluded that petitioner intentionally aided his brother in the reckless and depravedly indifferent attack on Warren, with reckless disregard as to whether he would be fatally shot. Petitioner argues that the evidence demonstrated, however, that his brother's conduct was intentional and not reckless, and that his conviction for acting as an accomplice to a crime that his brother did not commit must be vacated. Further, he contends that post-conviction changes in the depraved indifference murder jurisprudence of the New York Court of Appeals must be applied to his conviction and that those changes render his conviction invalid. Thus, to adjudicate petitioner's sufficiency claim, this Court must determine whether, construing the evidence in the light most favorable to the prosecution, any reasonable juror could have concluded that petitioner aided his brother in the depraved indifference murder of Warren with the mental culpability required under the applicable definition of the crime.

II. Applicable Depraved Indifference Murder Law

Under the Register formulation, the culpable mental state required for depraved indifference murder was recklessness. Register, 60 N.Y.2d at 276. As reaffirmed in People v. Sanchez, 98 N.Y.2d 373 (2002), decided in July of 2002, over a year and a half after petitioner

was sentenced,

> Register requires a significantly heightened recklessness, distinguishing [depraved indifference murder] from manslaughter in two ways. First, "in a depraved mind murder the actor's conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death." Then, it also requires proof of circumstances manifesting a depraved indifference to human life, focusing the inquiry, as we have seen, "upon an objective assessment of the degree of risk" which "converts the substantial risk present in manslaughter into a _very_ substantial risk"

Id. at 380 (quoting Register) (citations omitted; emphasis in original). As articulated by the Court of Appeals in Policano v. Herbert, 7 N.Y.3d 588 (2006):

> Sanchez epitomized [the New York Court of Appeals's] depraved indifference jurisprudence under the Register regime, the hallmarks of which—at least with respect to fatal one-on-one shootings or knifings—were twofold. First, even though such an attack by its very nature presents compelling circumstantial evidence of intent to cause death, we considered the question of the defendant's state of mind to be a classic matter for the jury. . . .
>
> Second, the factual setting in which the risk-creating conduct must occur, viewed objectively—Register's standard for determining whether there are circumstances evincing a depraved indifference to human life—was fulfilled if a defendant's actions created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range. As [the court] expressed this concept in Sanchez, where the defendant's actions created "a transcendent risk" of causing death, "the level of manifested depravity needed to establish [depraved indifference murder]" was "readily" met.

Policano, 7 N.Y.3d at 599-600 (quoting Sanchez, 98 N.Y.2d at 378). The Court of Appeals emphasized that "it has never been permissible in New York for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim.'" Policano, 7 N.Y.3d at 600 (citation omitted). Nevertheless, under the Register

6

formulation,

> [t]hat a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary . . . the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent—for example, a point-blank shooting of the victim in the head—likewise demonstrated depraved indifference.

Policano, 7 N.Y.3d at 601. It was not improper to charge depraved indifference murder in one-on-one shootings or knifings "unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally." Id.

After the Sanchez decision, the interpretation of one of the elements of depraved indifference murder, "under circumstances evincing a depraved indifference to human life," "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the Register formulation) to a mens rea." Id. at 602-03. As stated by the Court of Appeals, "[t]he purpose of [the] new interpretation of 'under circumstances evincing a depraved indifference to human life' [was] to dispel the confusion between intentional and depraved indifference murder, and thus cut off the continuing improper expansion of depraved indifference murder." Id. at 603. The changes began with People v. Hafeez, 100 N.Y.2d 253 (2003), a decision rendered within one year of Sanchez, continued with People v. Gonzalez, 1 N.Y.3d 464 (2004), People v. Payne, 3 N.Y.3d 266 (2004) and People v. Suarez, 6 N.Y.3d 202 (2005), and ended with People v. Feingold, 7 N.Y.3d 288 (2006). Id. Under current New York law,

> it is now clear that . . . "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder" (Payne, 3 N.Y.3d at 272); that "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances" (Suarez, 6 N.Y.3d at 212); and that "'depraved indifference to human life' is a culpable mental state" (Feingold, 7 N.Y.3d at 296).

7

Id. at 601. The Court of Appeals acknowledged, however, that:

> [a]s the many concurring decisions and dissents in these cases and the dissent in this case illustrate, individual judges hold differing views as to where along this trajectory a majority of the Court may have effectively passed the point of no return—the limit beyond which, hard as we may have tried, it was simply not possible to reconcile our developing case law with Register and Sanchez.

Id. at 603. While the Court of Appeals left open the question of which case represented the "point of no return,"[2] it held that the post-Sanchez case law did not apply retroactively. Id. at 603-04.

The Second Circuit recently addressed, as a question of first impression, "whether, or under what circumstances, due process requires that a new interpretation of a criminal statute by a state's highest court be applied retroactively on collateral review." Henry v. Ricks, 578 F.3d 134, 139-140 (2d Cir. 2009). Noting that in Policano, "the New York Court of Appeals applied its own precedent to determine whether its new interpretation of New York Penal Law § 125.25(2) applied retroactively and concluded that it did not," the Circuit held that the Due Process Clause does not require retroactive application of the new interpretation. Id. at 141. Accordingly, this Court must apply New York law as it existed at the time petitioner's

---

[2] After Policano, in People v. Baptiste, 853 N.Y.S.2d 719 (App. Div. 2008), leave to appeal denied, 10 N.Y.3d 932 (2008), the Appellate Division, Third Department, concluded that Payne was "'the point of no return'—the first case that was irreconcilable with Sanchez—it marks the cut-off date for application of the new rule." Id. at 728. The court reasoned that after Payne, "depraved indifference murder may be found only where a defendant's conduct endangers others indiscriminately or in narrowly defined factual circumstances evincing uncommon brutality—set forth in People v. Payne, 3 N.Y.3d at 271, and further clarified in People v. Suarez, 6 N.Y.3d at 212-215—demonstrating lack of intent combined with 'a depraved kind of wantonness.'" Id. at 727 (internal quotation and citation omitted). "Depraved indifference is now treated as a mental state evinced only by certain narrow factual circumstances, and can no longer be 'established by recklessness coupled only with actions that carry even an inevitable risk of death,' as in Sanchez." Id. at 728 (citation omitted).

8

conviction became final. See also Flowers v. Fisher, 296 Fed. Appx. 208, 210 (2d Cir. 2008) ("We look to New York law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively.") Thus, only Hafeez applies.

III. Evaluation of Sufficiency

Even under Hafeez, petitioner's is not entitled to relief on sufficiency grounds. As analyzed by the Second Circuit, "[t]he Hafeez court did no more than find, under the particular facts of that case, that there was no evidence that the defendant acted with anything other than intent to kill, and therefore that the defendant's conviction for depraved indifference murder was improper." Grant v. Woods, 313 Fed.Appx. 376, 377 (2d Cir. 2009). In Hafeez, defendant and codefendant retaliated against the victim for an eye injury codefendant sustained in a barroom confrontation months earlier. On the night of the murder, defendant and codefendant lured the victim out of the same bar, defendant pushed him up against a wall and codefendant struggled with him and stabbed him in the heart. The two drove away in defendant's van, stopping to allow codefendant to discard the what remained of the murder weapon into a sewer. Defendant was charged as an accomplice with both intentional and depraved indifference murder. He was acquitted of intentional murder, but convicted of depraved indifference murder. The Appellate Division reversed his conviction on appeal, and the Court of Appeals affirmed the reversal, finding that codefendant plotted his revenge for months, lured the victim into a vulnerable position and attacked him with a knife. The stabbing "was a quintessentially intentional attack directed solely at the victim." Hafeez, 100 N.Y.2d at 258. The Court concluded that:

9

> . . . the actions of both defendants were focused on first isolating, and then intentionally injuring, the victim. From this record there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder. The "heightened recklessness" required for depraved indifference murder was simply not present.

Id. at 259.

In contrast to Hafeez, "where the only reasonable conclusion was that the defendant intended to kill," Grant, 313 Fed. Appx. at 377, a rational juror could have found that petitioner's brother did not intend to kill Warren but, instead, recklessly brandished his gun to threaten him, perhaps because he had called petitioner a "pussy." Petitioner testified that everything "happened so fast," "Warren st[u]ck his arm up on the gun," and that "there was quick hand action and a shot went off." Indeed, given that Warren did not have a gun and petitioner's gun was not loaded, a rational juror could have inferred that the encounter was so frenetic that petitioner's brother accidentally shot himself. Thus, petitioner's case is "squarely within the then-established rule that a . . . depraved indifference murder count[] could be submitted to the jury unless there was 'absolutely no evidence whatsoever that the defendant might have acted unintentionally.'" Id. (citing Policano, 7 N.Y.3d at 601).

Moreover, until Payne, the Court of Appeals had not articulated that "it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide. Firing more rounds or inflicting more wounds does not make the act more depravedly *indifferent,* but more intentional," Payne, 3 N.Y.3d at 272 (emphasis in original). Thus, at the time petitioner's conviction became final, the law was still such that depraved indifference "was fulfilled if a defendant's actions created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range." Policano, 7

N.Y.3d at 600. Under the standard applicable to petitioner, the fact that his brother shot Warren five times in the head and neck "support[ed] rather than detract[ed] from characterizing [his conduct] as evincing depraved indifference to human life." Sanchez, 98 N.Y.2d at 384. Thus, petitioner is not entitled to relief on sufficiency grounds.

IV. Ineffective Assistance of Trial and Appellate Counsel

Petitioner faults trial counsel for failing to properly preserve his sufficiency claim, failing to raise an inconsistent verdict claim and failing to object to a constructive amendment of the indictment by the prosecution. In addition, petitioner faults appellate counsel for not claiming trial counsel was ineffective for failing to preserve the sufficiency claim and failing to object to the constructive amendment.

To demonstrate constitutionally ineffective assistance, petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that petitioner was prejudiced by the deficient performance, id. at 692; see also Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (applying Strickland to ineffective assistance of appellate counsel claim); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (same).

In addition, all of petitioner's claims save one—that trial counsel was ineffective for failing to object to a constructive amendment of the indictment—were raised in state court and rejected on the merits. Thus, habeas relief cannot be granted on these claims unless the state court's application of Strickland to the claims was objectively unreasonable. See 28 U.S.C. § 2254(d)(1) (writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court" unless the decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court"); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004) (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state court applied Strickland incorrectly.).

*A. Failure to Challenge Sufficiency*

Despite trial counsel's failure to properly preserve the sufficiency claim, the Appellate Division addressed and rejected it on the merits. Thus, petitioner cannot demonstrate prejudice under Strickland. See Waters v. McGuiness, No. 99-CV-0615, 2003 WL 21508318, at *3 (E.D.N.Y. June 16, 2003) ("The Appellate Division reached the merits of the claim on direct appeal . . . . Even if counsel was ineffective for failing to preserve the claim, therefore, petitioner was not prejudiced because the Appellate Division entertained the claim and rejected it on the merits."). Petitioner's sufficiency claim was denied again on the merits by the Section 440 court on the ground that even under Hafeez, Gonzalez, and Payne, petitioner's conviction was valid, and that decision was affirmed by the Appellate Division. Accordingly, petitioner is not entitled to relief on his ineffective assistance of counsel claims relating to sufficiency.

*B. Failure to Object to Inconsistent Verdict*

Petitioner contends that counsel was ineffective for failing to object to his conviction on the depraved indifference murder count as inconsistent with his acquittal on the weapons possession counts. To determine whether a jury verdict is inconsistent, the state court looks only to the jury charge that was given, regardless of the charge's accuracy. See People v. Tucker, 55 N.Y.2d 1, 7-8 (1981). Reversal is appropriate only where an acquittal on one crime as charged is conclusive as to an essential element of another crime as charged for which defendant was found guilty. See id. at 7; see also People v. Williams, 366 N.Y.S.2d 894, 899 (App. Div. 1975)

("Where a defendant is convicted of one crime and acquitted of another, and the elements of each are 'identical', such verdict is not only inconsistent, it is described as repugnant and the judgment may not stand.").

The court instructed the jury with respect to depraved indifference murder that petitioner was accused of "acting in concert in the discharge of a deadly weapon; namely a handgun," (Tr. 589), and that to find him guilty they must find, among other elements, beyond a reasonable doubt that petitioner "acted in concert with another" and "engaged in conduct which created a grave risk of death to Derek Warren by discharging a deadly weapon; that is, a handgun, thereby inflicting various wounds and injury upon Derek Warren, and as a result of those wounds and injuries, Derek Warren died," (Tr. 594-95). With respect to criminal possession of a weapon in both the second and third degree, the court charged that to find petitioner guilty, the jury must find, among other elements, beyond a reasonable doubt that petitioner "acting in concert with his brother, possessed a loaded firearm," (Tr. 599, 601), and that "[t]o possess means to have physical possession or otherwise exercise control over" and "the possession must be known; that is, the possessor must be aware of his possession," (Tr. 599).

Petitioner insists that "it was logically inconsistent for the jury, as charged, to convict petitioner of acting in concert to use a weapon that he did not act in concert to possess." (Pet. Mem. at 32.) Petitioner's argument is itself logically flawed. Indeed, it is precisely because petitioner was charged under an acting-in-concert theory that the verdicts on the counts harmonize. The jury could convict petitioner for aiding his brother by phoning ahead to clear Plazza from the store and by "backing him up" in his attack on Warren, yet acquit him on the weapon possession counts because he did not aid his brother in the possession of the gun he used. See People v. Malave, 860 N.Y.S.2d 365, 366 (App. Div. 2008) ("[t]he counts of criminal

possession of a weapon in the second and third degrees, as charged, contained an element not found in the murder count under which he was convicted as an accomplice, i.e., possession of a loaded gun."); People v. Nash, 710 N.Y.S.2d 157, 161 (App. Div. 2000) ("[I]f the jury concluded that [defendant's accomplice] caused the death of the victim and that defendant acted in concert with her during the commission of the robbery, the jury could properly convict defendant of murder in the second degree and at the same time find that he did not possess the hammer or the knife."); see also People v. Mabry, 733 N.Y.S.2d 615, 616 (App. Div. 2001) ("[D]efendant's acquittal of . . . criminal possession of a weapon in the second degree and . . . third degree did not render inconsistent or repugnant her convictions for murder in the second degree and the two counts of attempted robbery in the first degree. . . . [A]s charged, [they] contained elements not found in the murder and attempted robbery counts."). An objection to the verdict as inconsistent would have been meritless, and trial counsel cannot be faulted for failing to make it. Relief on this ground is denied.

*C. Failure to Object to Constructive Amendment*

Finally, petitioner contends that there was a constructive amendment to the indictment and that trial counsel was ineffective for failing to object to it. He also faults appellate counsel for not raising an ineffective assistance of trial counsel claim on this ground. Petitioner relies on People v. Grega, 72 N.Y.2d 489 (1988) in arguing that the prosecutor's description during summation of the shooting as "deliberate," "an execution," "cold-blooded" and "premeditated" (Tr. 557, 559, 566), and her remark that petitioner and his brother "enter[ed] the store to commit murder" (Tr. 560), resulted in a constructive amendment of the indictment.

In Grega, the New York Court of Appeals examined the New York Constitution's right to grand jury indictment and recognized that "[p]roof at trial that varies from the indictment

14

potentially compromises two of the functions of the indictment—notice to the accused and the exclusive power of the Grand Jury to determine the charges." Grega, 72 N.Y.2d at 496. Further, the court held that when the proof at trial contradicts the factual allegations in the indictment, "the constitutional . . . requirement[] that an indictment provide fair notice in order to permit the preparation of a defense" is violated. Id. at 497; see also LanFranco v. Murray, 313 F.3d 112, 119 (2d Cir. 2002) (citing Grega); Player v. Artuz, No. 06 CV 2764, 2007 WL 708793, *7 (E.D.N.Y. March 6, 2007) (citing Grega).

Notwithstanding the prosecutor's summation remarks, the proof presented in petitioner's case did not contradict the factual allegations in the indictment, which charged "on or about March 8, 2000, in the County of Kings, under circumstances evidencing a depraved indifference to human life, the defendant recklessly engaged in conduct which created a grave risk of death to Derek Warren by acting in concert in the discharge of a deadly weapon; namely, a handgun, thereby inflicting wounds and injuries upon Derek Warren and, thereafter, Derek Warren died of those injuries and wounds." (Tr. 589.) Moreover, the trial court's jury instructions permitted the jury to consider only the crime of depraved indifference murder, not intentional murder. Cf. Grega, 72 N.Y.2d at 496 (where jury instructions allow consideration of an uncharged theory of the crime, right to be tried only for crimes charged by Grand Jury may be violated). Indeed, the jury was specifically told that petitioner was not charged with intentionally causing Warren's death. (Tr. 590.) In addition, the jury was properly instructed that counsels' summation arguments did not constitute evidence. (Tr. 571.)

Because petitioner's constructive amendment claim lacks merit, his related claims of ineffective assistance of trial and appellate counsel also fail. Relief on these grounds is denied.

## Conclusion

For the reasons stated above, the application for a writ of habeas corpus is denied, and the petition is dismissed. A certificate of appealability will not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      May 13, 2010

                                        s/Raymond J. Dearie
                                        RAYMOND J. DEARIE
                                        United States District Judge